Alabama-Quassarte Tribal Town v. U.S. 177003. May it please the Court. Please. My name is Eugene Burtman and I represent the Alabama-Quassarte Tribal Town. I am here joined today with Town King Nelson Harjo and Second Chief Robert Yargy. This case comes to this court after 10 years at the trial court with the addition, by way of adding four different court opinions to get a final judgment. And it began with a motion for judgment on the pleadings, which is supposed to consider the facts in the petition in favor of the non-movement, which was the Alabama-Quassarte Tribal Town, but did not appear to do that. From that point, there was a second opinion based on a summary judgment motion that determined that part of the case would be remanded to the Indian Bureau of Indian Affairs, Interior Board of Indian, the Bureau of Indian Affairs. And then from there, it was remanded back to the Bureau of Indian Affairs, and from there it was remanded the case over to the Interior Board of Indian Appeals, which then made a decision based upon a voluminous record of about over 7,000 pages of documents, which then wound back up at the trial court for another motion to dismiss with the addition of the Muscogee Creek Nation, and then finally a motion to motion on summary judgment with respect to the IVI. So I had a very sordid pass to get here. And in not one of those instances did the tribe give a trial. The tribe get any factual issues other than the facts being determined based on a bare, cold record. And that is ultimately the problem in this case, is that it is difficult to work through a 10-year case with the record identifying that everybody agrees that the Alabama-Quassarte Tribal Town was entitled to this 878.25 acres in Hughes County, Oklahoma, to have the courts and everybody ignore all that and through procedural matters and looking at facts, in my opinion, more favorable to the federal government and the Muscogee Creek Nation, and not give them their day in court. And so let's go back to that first decision. So in that first decision, we have the trial court making four decisions. First, they decided that the case was not right, well, was time limited, because of 2401A and 70K, or 25 U.S.C. 70K, which is the Indian Claims Commissions Act, which limited any claims that arose before 1946. And it based this on the deed that transferred this land to the United States when it took it originally in trust. In those deeds, they do recognize that it was brought in trust for the Creek Nation, and then it also recognized that it was to be held until it was assigned to another tribe. What the court said was, well, that's when your claim arose. That's because back in 1946 or 1941, you should have recognized that the deed was wrong. The problem is, is that you have to look at the lay of the land at that point in time. And in that point in time, under the law, under the Five Tribes Act, which this court should be aware of, cited in the brief, the Creek Nation really didn't exist as a nation. They were certainly people and certainly a group distinct with that respect. But the federal government and Congress had decided that all their Congress could do was meet and adjourn. That's the only thing that Congress could do. They couldn't pass any laws. They couldn't make any decisions. Second, their chief, their principal chief of the Creek Nation at that point in time, all he could do was sign whatever the federal government required be put in front of him. So to say that the Creek Nation was actively involved or that some claim arose back in this point in time is difficult to imagine. In addition, we would see the same arguments by the federal government at that time also. They're going to say, well, you failed to exhaust administrative remedies because there's a whole administrative agency in the middle of this action. There's the Bureau of Indian Affairs who's managing and running this property. Clearly, we would have the ability to resolve any issues before the Bureau. And that's what has gone on since the 1940s. I kind of want you to address sort of a basic point that the appellees make, and that is that you have chosen expressly not to challenge the district court's alternative basis for its ruling, which is that this action is barred by the quiet title act, which waives sovereign immunity but specifically says it doesn't apply to trust or restricted Indian lands. You expressly choose not to challenge that ruling, which means that ruling stands, and as appellees argue, we could simply choose to rely on that and affirm based on that unchallenged alternative basis for a ruling. Well, I think that you have to understand what the trial court made in that ruling. The trial court made that ruling based on, and I have to take it for its word, on any other lands. It said that you can't sue the government to obtain on the other lands because that would fall within the quiet title act. It did not address this issue with respect to the actual underlying claim, which is addressed in my reply brief. Well, isn't that exactly what you were seeking? First of all, isn't that what you were seeking in the complaint is didn't you refer to any lands or, I mean, I guess I'm not understanding, and the government doesn't seem to, it seems a bit confused by your distinction here. You seem to be saying now, well, we weren't seeking any other land. We were seeking the Wetumpka project lands, but that is within any other land. It still seems to be subject to the quiet title acts prohibition against applying to trust or restricted Indian lands. Right. That is an attack on the government's ownership of the land. We're not attacking the government's ownership of the land. After this case, the land will still remain owned by the government. The issue here is with respect to the administrative process that the tribe had to follow in order to obtain the land, and that's covered by 25 CFR 151. And so that's why the quiet title act doesn't really apply to this case because we're not challenging. But ultimately you're seeking assignment of the land that the government holds an interest in. You're challenging that interest. It is an adversarial proceeding. Well, again, I think what you're conflating is trying to attack the title to the land itself, which is a quiet title action, seeking reformation or other thing, and seeking the government to perform its obligations under 25 CFR 251 or 151, which is about land acquisition and disputes between tribes and lands and things like that. It would be difficult to see an accessionally in the Potawatomi case, Potawatomi-Patchak case, which says that you have to have some adverse claim against the United States. Here there is no adverse claim against the United States. This adverse claim is between two tribes. And the United States doesn't really have an interest as to what happens. And that's why there's this administrative proceeding. The United States certainly does have an interest in this land. And you're asking them to assign the title. Right, but I'm not challenging the United States' interest in it. And that's the adverse part of the claim. And that's where – that's what a quiet title action would be, would be to go after the specific instance in that land, a right that the United States had. But understand that the history of this all throughout the land is that the tribe – Not really, because the United States is still going to hold it. The United States still has the management authority over it. They still have all the trust responsibilities over it. None of that is being attacked. The question is whether it's Muscogee Creek Nation or whether it's the Ivano-Cruzado tribal town. And up until 2005, as noted in the record, the United States still wasn't sure. It actually cites in their brief – they actually have a letter in 2005, which we cite in our case, which talks about that there's competing claims now between the two tribes and that the United States needs to come in and resolve that. Do you understand the United States to be asserting any interest other than as a fiduciary or stakeholder? That's all they're claiming. There's no other interest other than the issue with respect to between these two tribes. It's only interest – as a matter of fact, the letter says, I'm going to try and get the two sides together and see if we can work out some resolution where I've got to make a decision. As a matter of fact, there's a 1996 letter in the record that says the same thing. It says, let's come together. I have seven different points that we need to address, and then from there I'll make a decision. And that's the problem. Without the exhaustion of those tribal remedies, had I come to court any time earlier, the court would have said, you're here too soon. You have to get a decision from the court. Now, there is some exceptions to that, but we've tried on numerous occasions, and they've died or been left alone on making a decision. That's why what we're seeking here is with respect to the administrative proceeding and to request that the United States be required to live up to their obligation. Now, as a corollary to this, the question is whether the Muscogee Creek Nation is even a required party at this point. Again, in the original pleadings, if we look back at that original motion, we have in the pleading stating that the Muscogee Creek Nation waived or had already disavowed ownership with respect to that. In the Indian Claims Commission case in which they were granted a $3 million judgment, and then the government sought to apply the land, and the tribe said, no, no, no, that's not our land. And so, again, at that point in the case, you have to take that as true. You can't start assuming other facts that aren't in the record at that point and lock us down into this original deed and this original issue. So, again, we'll jump forward to the remand down to the IBIA, into the Bureau, which then assigns the IBIA. Again, we have no trial. We have no history. We have nothing going on except the Bureau looking at the facts. And in the IBIA opinion, it does note that neither party said they wanted a hearing. But at the same time, I've had that happen in almost every case. I mean, I think there's not an ambiguous contract on the planet, according to any attorney on either side. The facts are there are. And that's where the court steps in and says we need to have a hearing. Let's go back to the path that you were following. You indicated that at some early point in the history of this litigation or in the history of this controversy, that the state of your clients were not organized in any proper way, nor did they have the legal standing or authority, apparently, to assert the claim that is now attempted to be barred. Well, I think what I'm saying is the Alabama cushota, I mean, the federal government recognized historically at that point in time they were not organized enough to manage. I think that's in the record. And then on top of that. And then follow your chronology. So after that, what happened? So after that, then all the land is used for the benefit of the tribe. I mean, they get the Alabama cushota tribe. They get the benefit from the money. They get the benefit of the use of the land. They have a committee that votes on the property. And all of this is sent over to the federal government for them to approve. And then the federal government adds in the Creek Nation. Through what time period? This is through 1940 through, I think, 1970, mid-1970s. All right. And then what happened? And then the 1970s is when Creek Nation is then recognized. They're actually not recognized until 1980. And there's an issue which the government is actually researching at this time and stating that they haven't figured out who owns what at that point. And there's plenty in the record that shows they're going back and forth on this issue. It's not until the 1980s, which then is when the first resolution from the Creek Nation comes over to the tribe, to the United States, which says, hey, give that property over to the tribe. It's not ours. And that's also following the earlier decision previously. And so I would ask if I could reserve the last minute of my time for rebuttal.  You're reserved. May it please the Court. Brian Toth from the United States Department of Justice on behalf of the defendants, I believe. Do you claim any interest in this litigation other than as a fiduciary or stakeholder? We don't have a... I mean, that's how the property is held, in trust for the tribe. So the United States... For the benefit of whom? For... It's listed... It's held in trust from the Muscogee Creek Nation. And Counsel for the Nation is here. Is that always the case? It was always the case. That's how the deeds for this tribal town were taken into trust, and that's how they've always been held. And that wouldn't change even if the plaintiffs prevailed? If the plaintiffs prevailed, there would have to be an assignment. The federal government's... What you've described about the government's interest here would not change even if the plaintiffs prevailed. We would still be acting as fiduciary and holding the land in trust for a different tribe. Each tribe is going to be different and have different needs for the land, making use of the land, make different requests, how to use it, how to use the funds. So we'd have to deal with them as, you know, an independent tribe, just as they are. So as my friend in Texas says from time to time, I ain't got no dog in this fight. Well, but we... Just a moment. And what is your dog in this fight? So the United States always has a sovereign interest when it acts as a fiduciary with respect to Indian tribes. And that's... I understand. But, I mean, as between the two tribes, are your thumbs on the side of one of the tribes, or are you genuinely a neutral fiduciary and stakeholder? We have fiduciary responsibilities to both tribes. With respect to this land, it's directly to the Muscogee Creek Nation. And we also have a responsibility to comply with regulations and statutes. That's uniquely a sovereign obligation. Well, who has had physical possession of this land from historically? Historically, between roughly 1941 and 1973, it was the tribal town and its members who were physically possessing the land or working the land. And after that, the Muscogee Creek Nation took control, and the record shows they ran their own agricultural operation for some years on that land. For their own benefit and not for the benefit of the town? For their own benefit. But keep in mind that the tribal town has members who are able to obtain dual citizenship in the Muscogee Creek Nation as well. So to the extent that they can obtain services and benefits through the Muscogee Creek Nation, as well as through the tribal town to separate tribes, the benefits would in direct flow to them. And that's really the rationale why this land was held in this fairly... I'm going to say unique arrangement. It's unique to the tribal towns and the creeks in Oklahoma. But the Creek Nation was... The United States had long held relations with that tribe from the early 1800s at least. And it knew how to deal with them. But it also was in the process of assimilating the Creek Nation into the United States' citizenry. And that was the policy of that era. That policy changed over time. And now we have an era where each tribe is pursuing its own independent destiny, if you will, under federal law. But in the 1940s when this land was taken into trust, the Creek Nation was understood as having a centralized government speaking through the principal chief. And my friend does recount the history of how the United States essentially sidelined the Muscogee Nation Creek Council, tribal council, for a number of years until the late 70s. But this is a historical anomaly. But it wasn't irrational. That's the point. Even if it were later held to be not the correct way that the creeks view their society and their citizens, or the way that two independent tribes might function under today's statutes, it's not perhaps the way that we would have acquired land and trust today on behalf of either tribe. But it was not irrational at the time because of the way the United States understood Indian affairs of the Creek Nation. So is it fair to say that when you plow through everything else, what this problem is about is that the government has, the U.S. government, has punted on this, and we're talking now about the claim rather than whether it's correct or not, and that they've never made the decisions that were discussed from time to time in their exercise to assign these properties where they were, that there's never been a Department of Indian Affairs definitive decision that the plaintiffs either do or don't have the equitable, what I call the equitable, interest in this property? Is that a fair statement? I understand the proposition. There hasn't been a written decision, a written final decision that says, no, we are not going to assign this. But there is a- There hasn't been any decision. There was a- It's been a decision not to decide. It seems that way. I mean, that's the Arab case, right? If you go into the record- It's the what of the case. I mean, that's kind of what's, that's the setting, right? I mean, that's their argument, that this is the atmosphere of the case, that there's never been a decision. We just kicked the can down the road. What happened in- It seems to me that you kicked it in one express direction by appearing here and aligning yourself with the Muscogee Nation. But we were sued for breaching our trust duties. The United States was sued for breaching judiciary duties to the tribe. Right, and you said, well, we didn't breach them because Muscogee's right. Even though you hadn't previously made that decision. If I understand Judge McKay's questions and your answer to the question- So, there was not a formal denial, but there's a letter from October 96 in the supplemental appendix. I can get you the site. It is a letter to both tribes from the Secretary of the Interior. This is the mid-90s. This is after numerous petitions. They've asked several times, you know, dating back to around 1980. They asked. And Interior, you know, yeah, Interior didn't give a clear, unequivocal answer. But they were on notice at that time that if they wanted one, there's case law in this circuit. We didn't cite it in our brief, Forest Guardians, the 1999 case. It says you can compel the government under the APA to respond to a petition for rulemaking, for instance. Not to respond in a particular way, but to give an answer. And that's about as easy as threading a needle from two miles distance. So, but if they didn't have a clear and unequivocal answer, a clear and unequivocal no, they could have gone to court and they could have said, court, compel the Interior Department to answer our request. They didn't do that. But it at least demonstrates that they were on notice that this request had been pending for a long time and they did have opportunities to do something about it judicially. So let me understand what you're saying. So you're saying is side A has an interest and side B has an interest, and the government is the stakeholder that has a fiduciary obligation to make sure that, I don't want to make sure what, but to make sure that justice is done. And A insists that you do something, you do something, you do something, and you don't. That all of a sudden, voila, they're wrong, and A is wrong and B is right. Why? I mean, what's the rationale? Well, the point is not A is wrong. You say in Latin days, what's the ratio? So this October 96 letter, you know, finally, 15 years, 16 years later, after the 1980 requests, letter requests, further letters, Interior says, this is how we're going to proceed. Writes a letter to both tribes and says, we have these regulations at 25 CFR part 151.10, they cited. It's a host of factors that apply to acquisitions of trust lands within an existing reservation. And for purposes of Oklahoma, that includes former reservations, which is how the United States regards. Meanwhile, back to the ranch, who has, who's in possession of the land right now, today? Today, it's the Creek Nation. I don't know who's physically, if there's anybody physically possessing. Physically, who's in possession? That is not in the record. The last evidence in the record we have. Does the government know that answer, the answer to the question? I do not know the answer, standing here before you. So it's the, you know, it's land that's held in trust for the Creek Nation. They would have to, if they want to lease it again, you know, they would come to the Secretary of the Interior and submit a proposal for approval of a lease. That's how this fiduciary responsibility works. Getting back to these regulations, what Interior did say in the mid-90s was, we are going to follow these regulations because we have an Interior Board of Indian Appeals decision, it was called the Kyaliji decision, cited in the record materials, that applies this regulation to tribal towns, of which Alabama-Cusata is one. And it said, one of the regulations is that the consent of the Creek Nation would be required. This is under 25 CFR 151.8, which the Secretary found was applicable and required the consent of the Creek Nation. And they said, this is the regulation under which we will proceed going forward. So from that point in time, in 1996, they were on notice that these regulations, which include a requirement of consent, were going to apply. And... Did they take any steps in 1996? They, what they did, when you say, did they take any...  So I believe all the parties... The appellates. Not to file, they didn't file suit until 2006. But there were continuing discussions. And it gets, the record gets murky on what happened between 96 and the filing of suit in 2006. But there are indications that the Secretary or the Interior personnel were trying to set up meetings, try to resolve this in a way where everybody can mutually agree to something, just as there was mutual agreement to the land arrangements in the 1940s. So is your point that the cause of action would have arisen at the latest in 1996 when they were quite clear that the government was going to require consent of the Creek Nation? That's... I think that is... You could use that point and they would still be untimely. I think your point in your briefing is it was earlier, but... Yes. If you wanted a definitive point, would you say that was the point? Yes. Yes, I think that's a point where they were definitely on notice that this regulation, 25 CFR 151.8, which requires consent of the tribe within whose reservation the land is to be acquired, would apply. And would require the Creek Nation to say yes. The Creek Nation then, in response to that October 96 letter, passed a resolution saying no. But then they passed... And that was contrary to the resolution that they passed in 1980 saying something different. Correct. That's correct. But at that point, title hadn't been transferred, so, you know, beneficial title... Could you address the waiver? You started to address the waiver of sovereign immunity. Do you disagree with counsel's statements about the Quiet Title Act not applying because it's not challenging the government's... Essentially, it's not adversarial towards the government. Well, we think our position is that it does apply here. The nice thing would have been if it had been fully briefed in that way and we could have addressed those arguments squarely. It wasn't briefed below in that way either. No. I mean, I didn't see that... No, that's true. But, you know, the Quiet... It was a very short paragraph in the district court's ruling, and they didn't, they did not appeal it. So... But I'm wondering if you really are really truly asserting that the Quiet Title Act somehow bars... Well, we are asserting that. We did assert it below, and it's... What is your argument for that? So the Quiet Title Act ought to be construed as it includes a waiver of sovereign immunity in favor of the government. Right. And the exception for Indian lands, therefore, ought to be interpreted broadly to include... I mean, ultimately, this is a statute that was passed through careful consideration and includes a lot of detailed exceptions, one of which is it does not apply to Indian lands. Right. The question, I think, that my friend gets at is whether this is really adjudicating a disputed title to real property... Right. ...in which the United States claims an interest. The United States holds a title in trust for Muscogee Greek Nation. Muscogee is thought of as having the equitable interest. The tribal town would like that equitable interest, but the United States would still be the trustee. That changes the terms. It requires an assignment of the title, an assignment of the equitable interest, but it does not change the United States' role as trustee. Well, is the title really at issue? I mean, the United States, the title is in the United States for the benefit of, right? Right. And the question is, whose benefit is in title? Is it held by you as a stakeholder for? That doesn't seem to me to implicate the Quiet Title Act. Well, their vehicle for bringing suit is the APA, right? And the Block First is North Dakota case in the Supreme Court from decades ago. It looked at whether you can use the APA to bring an officer suit, essentially asking for mandamus, asking for a federal officer to do something and saying, well, that's not really a quiet title action because we're not suing the sovereign. We're just asking the court to compel an officer of the United States to do something about the land, about the title. And the court said, no, you can't circumvent Congress's clear limitations in the Quiet Title Act in that fashion by repleting it under the Administrative Procedure Act or through the device of a non-APA officer suit. And so we'd submit the same principles apply here. They can't circumvent the Indian lands exception when really what they're doing is challenging how the government holds title. Not the government's interest as a fiduciary, but the government's role with respect to the beneficial Indian tribes. And I would like to leave. I've left no time for my colleague from the Muscogee Creek Nation. I think we'll grant a minute for your colleague. Okay, but I do want to. That's to leave your loquacious colleague seated and you standing, if you may. That's all right. I mean, finish. Yes. So, I mean, just to sum up. Not in a minute to sum up, but finish in 10 seconds. Sure, no. I mean, there are three main bases the United States believes that the district courts really can be affirmed on the Quiet Title Act. 15 seconds are up. All right. We're ready to hear from Muscogee. Thank you. Thank you, Your Honor. My name is Keith Bartsch. I represent the Muscogee Creek Nation. Thank you. Very briefly, in the time left, I would just simply again state that one thing there's absolutely no question of, that beneficial title to this land vested in Muscogee Creek Nation in the 1940s and has not changed since that time. Historically, at the time it vested in Muscogee, was it in fact being used as asserted by the appellants? Your Honor, I would answer that question this way and not in any attempt to be misleading. It is essential that we all keep in mind that the Muscogee Creek Nation, a sovereign tribe of, as we stand here today, approximately 87,000, of that number, a subset, a political subdivision of that number, albeit a federally recognized tribe themselves, are also fully 100% Muscogee Creek citizens. And so we believe that given appellant citizens have full and unfettered access to all rights, privileges, government services, as any other Creek citizen, it is unjust and indeed, call it double dipping if you like, to seek equitable title and interest in this land that would inure only to that political subdivision, no advantage from which would flow back towards the tribe. Historically, though, was that the case, that it did historically inure to their benefit exclusively? Your Honor, I believe probably in the mid-19th century and earlier that may have been the case to some degree. I can't stand here, though, and tell you the identity of each person. I think that's been lost in history with regard to who actually worked that parcel. But I can tell you that since the dawn of the self-determination era in the 1970s. Let me ask you a quick question. Is there any property in which one of the, it's hard to find a vocabulary because of how tribes are defined there, but as I understand it, any group or tribe, like the plaintiffs who currently have the control of some property where they are also in the Creek Nation. There is indeed, sir. So the difference here and what's at stake is the power of a small group to control in a situation where they'll lose every time if it's left to the larger citizenship. Your Honor, I respectfully disagree. I believe that the one instance that is an example of which the circumstances you cite involves Flacco tribal town, a federally recognized town, also a dual citizen of the Creek Nation. For whatever reason, that assignment of beneficial title was made with respect to their parcel. It was not. Well, that goes to the merits. But what's at stake is whether they, the argument is whether they are entitled to have that same kind of treatment. So the fact that they also have a beneficial interest isn't of much use to them if it's 87 people against 80,000. At least that's what the issue is. I mean, I guess I'm just responding to your implied claim that there's no injustice here because they're members of the larger tribe. It's all right. I won't hold you up longer. Is there any kind of a fiduciary obligation on the part of the nation to this subset? Your Honor, I would respectfully suggest that per Muskogee Creek law, all citizens are treated equally. So I got the answer. All right. Thank you very much. I think you had a minute left, and we're going to add, in fairness, not the full three minutes, but we'll add, how about one and a half? That would be acceptable. Thank you, Your Honor. All right. Just a second because we're going to set the clock, and we're going to hold you to it. I think it's two and a half minutes or so. Well, it's going to take us longer to set the clock than to listen, so let's just listen. Okay. Your Honor, first to address the physical possession, I can, which isn't in the record, but the tribal town does have a church and a cemetery still on the land, and the Muskogee Creek Nation does run some cattle on the land. But beyond that, it's not being used for any further economic development for, in my opinion, any tribe. But again, that's going to the merits, which I think is what we're trying to get accomplished here. We have a comment here that the Muskogee Creek Nation and the Alabama Preschoda Tribal Town are the same thing. Well, they're not because the federal government says they're not. And at some level, we have to respect the federal government's decision on that. If the federal government wants to change their opinion, they certainly can. They have yet to do so in 80 years. How are you being adversely affected, may I ask? Do you ask the Muskogee Nation for use, for possession, for some kind of exclusivity of use for this land that you're being denied? Well, I think, well, this is the only land the Alabama Preschoda Tribal Town would ever have. This is what the tribe was formed for, well, it was formed previous to that, but that's what this was used for. And without it, the tribe is landless and just has fee land in Hughes County. As you can see, the sordid history on this property is, yes, it is, no, it isn't, yes, it is, no, it isn't. And that has continued throughout history up to this present day. There are some chiefs, principal chiefs in the Muskogee Creek Nation that are supportive of it. There are some chiefs that are not supportive of it. And the federal government sits in the middle and just doesn't do anything. Now, you did address an issue about, well, 96 was the earliest that this could have come and we should have filed a lawsuit then. But again, understand. Not then, just talking about when the cause of action would have accrued. Right. And I would say the cause of action wouldn't have accrued, still hasn't accrued because we still don't have a final decision. As the nation, as the United States said, they have yet to write anything that says somebody owns this other than in this litigation when they finally said, well, maybe the Muskogee Creek Nation do own that. So we would ask this court to reverse the trial court and allow this case to proceed to some sort of trial. Thank you. Thank you. Case is submitted. Counsel are excused.